1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CONCEPCION RAMIREZ,                    )          NO. EDCV 06-1384 AGR
                                       )
        Plaintiff,                     )
                                       )
        v.                             )
                                       )          MEMORANDUM OPINION AND
MICHAEL J. ASTRUE,                     )          ORDER
Commissioner of Social Security,       )
                                       )
        Defendant.                     )
_____)

        Concepcion Ramirez filed this action on December 14, 2006.  On March

13, 2007, the case was transferred to Magistrate Judge Alicia G. Rosenberg.

Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before

Magistrate Judge Rosenberg on March 16 and 19, 2007.  On August 21, 2007,

the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The

Court has taken the matter under submission without oral argument.

        Having reviewed the entire file, the Court affirms the Commissioner's

decision.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.**

## PROCEDURAL BACKGROUND

On April 1, 2004, Ramirez filed applications for disability insurance benefits and supplemental security income benefits.  A.R. 14.  The Commissioner initially denied the applications.  *Id.*  Ramirez requested a hearing.  *Id.*  The Administrative Law Judge ("ALJ") conducted a hearing on January 17, 2006, at which Ramirez and a vocational expert testified.  A.R. 197-232.  On April 11, 2006, the ALJ issued a decision denying benefits.  A.R. 14-22.  On April 20, 2006, Ramirez filed a request for review of the ALJ's decision.  A.R. 9.  On October 27, 2006, the Appeals Council denied the request for review.  A.R. 4-7.  This lawsuit followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

///

///

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.**

**DISCUSSION**

### A.    Pertinent Legal Standards

#### 1.    Definition of Disability

"A person qualifies as disabled, and thereby eligible for such benefits, 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### B.    The ALJ's Findings

The ALJ found that Ramirez had the following severe impairments: disorder of the knees, including chondromalacia[1] of the patella and torn lateral meniscus; obesity; diabetes mellitus; asthma; and arthritis.  A.R. 16.  He found that Ramirez had the residual functional capacity to lift or carry 25 pounds occasionally and 10 pounds frequently.  *Id.*  In an 8-hour day, Ramirez could stand or walk for 20 minutes at one time, 2 hours aggregate in the day; sit for 30 minutes at one time, 6 hours aggregate in the day; but she must be able to change positions every 30 minutes for 1-2 minutes at a time.  *Id.*

The ALJ found that Ramirez could not perform any of her past relevant work as a molding machine tender, kennel helper/adoptions clerk, electronic assembler, packer, security patrol officer, field supervisor, or client service supervisor.  A.R. 21.  However, she could perform work as an information clerk, an appointment clerk, or a charge account clerk.  A.R. 22.

///

///

---

[1] Chondromalacia is defined as "softening of any cartilage."  Stedman's Medical Dictionary 341 (27th ed. 2000).

3

C.    **Consideration of Medical Records**

1.    **Dr. Meltzer's Report**

Shortly after Ramirez felt unable to work (September 2003), she applied for state disability benefits.  A.R. 207.  She saw a state doctor, Lawrence Meltzer, on November 5, 2003.  A.R. 110.  Among other things, Dr. Meltzer found that Ramirez could not "return to her usual occupation at this time."  A.R. 111.  Dr. Meltzer opined that Ramirez "will be able to return to work on 2/5/04 - re-eval."  A.R. 112.

Without citing anything in the ALJ's decision, Ramirez argues that the ALJ used "the conclusion of [Dr. Meltzer's] report to suggest that the examining physician only precluded the Plaintiff from her last occupation, and not other occupations, implying that the examiner must have believed that the Plaintiff could perform other work."  JS 10.

Ramirez's argument is unsupported.  The ALJ stated that he carefully considered the entire record, including symptoms, objective medical evidence and opinion evidence.  A.R. 16-17.  The ALJ cited and described all medical sources, opinion evidence, and Ramirez's testimony.  A.R. 17-21, 110-112, 115-142, 143-152, 155-163, 164-165, 168-191.  Although it is true that the treating physicians expressed opinions as to Ramirez's inability to perform her customary work (A.R. 20), there is no indication that the ALJ relied on those opinions to conclude that Ramirez is able to perform other work.

The ALJ's use of Dr. Meltzer's report was not improper.

2.    **New Medical Records**

The Appeals Council received a MRI of Ramirez's right knee dated January 23, 2006, as additional evidence.[2]  A.R. 8, 194-196.  The Appeals Council

_____

[2]    "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council

4

1  concluded that the information "does not provide a basis for changing the

2  Administrative Law Judge's decision."  A.R. 5.  Given that the Appeals Council

3  addressed the additional reports in the context of denying review, this Court also

4  considers the reports.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir.

5  2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.), *cert. denied*, 531 U.S.

6  1038 (2000).

7       Ramirez argues the MRI is "new and material evidence" that the ALJ must

8  consider.  JS 11.  To warrant a remand, Ramirez must show that the new

9  evidence is material to determining her disability and there is good cause for the

10  failure to incorporate the new evidence in a prior proceeding.  42 U.S.C. § 405(g);

11  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  To be material, the new

12  evidence must bear "'directly and substantially on the matter in dispute.'"  *Mayes*,

13  276 F.3d at 462 (citation omitted).  In addition, Ramirez must demonstrate that

14  "there is a 'reasonable possibility' that the new evidence would have changed the

15  outcome of the administrative hearing."  (citation omitted)  *Id.*  "[T]he mere

16  existence of an impairment is insufficient proof of a disability."  *Matthews v.*

17  *Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted).

18       Here, Ramirez does not show a reasonable possibility that the new

19  evidence would have changed the outcome.[3]  The ALJ found that both of

20  Ramirez's knees were severely impaired.  A.R. 16, 20.  The ALJ noted that

21  Ramirez reported that "her right knee started acting up in June 2004."  A.R. 20.

22  The ALJ questioned Ramirez about her limitations at the hearing.  A.R. 210-217.

23  ///

24  ─────────────────

25  shall evaluate the entire record including the new and material evidence
   submitted if it relates to the period on or before the date of the administrative law
26  judge hearing decision.  It will then review the case if it finds that the
   administrative law judge's action, findings, or conclusion is contrary to the weight
27  of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b).

28       [3]   Accordingly, this Court does not reach the question of whether there
   is good cause.  42 U.S.C. § 405(g).

1  Ramirez does not argue that there is a reasonable possibility that the MRI would

2  have changed the outcome.  JS at 11.

3  **3.  Obesity**

4  The ALJ found that one of Ramirez's severe impairments was obesity.

5  A.R. 16.  He noted that Ramirez's medical records of September 2003 indicated

6  she was obese.  A.R. 17, 129.  He noted that Dr. Meltzer found Ramirez to be

7  obese.  A.R. 17, 110.  He noted that several times Ramirez was advised to lose

8  weight.  A.R. 17.  The ALJ also considered the effect of Ramirez's obesity on her

9  other impairments, overall condition, and residual functional capacity.  A.R. 19;

10  *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).  Although the ALJ found

11  that Ramirez had diabetes (A.R. 16), he also noted that Dr. Gaskins found in

12  November 2005 that there had been no diagnosis of diabetes to date (diagnosing

13  her with hyperlipidemia[4]), and that Ramirez testified that the medication she was

14  taking was helping her diabetes.  A.R. 18, 170, 202.  The ALJ also found that

15  although Ramirez has occasional hypertension, it, too, was controlled with

16  medication.  A.R. 18.  The ALJ also considered the impact of obesity on

17  Ramirez's lower extremities, including motor strength, range of motion, and

18  sensation.  A.R. 19.  The ALJ adequately considered Ramirez's obesity.  *Burch v.*

19  *Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005).

20  Ramirez does not identify any functional limitations due to obesity that the

21  ALJ failed to consider.  Ramirez contends that she "suffers from severe lower

22  extremity pain with walking or standing."  JS at 11.  However, there is substantial

23  evidence to support the ALJ's findings regarding Ramirez's limitations in walking

24  or standing.  Specifically, the ALJ found that Ramirez could "stand and/or walk"

25  for 2 hours total in an 8-hour day and for 20 minutes at a time.  A.R. 16.  Ramirez

26  herself testified that she could stand for 15-20 minutes at a time.  A.R. 211.

27

28  [4] Hyperlipidemia is defined as elevated concentrations of lipids in the
plasma.  Dorland's Pocket Medical Dictionary (24th ed.) at 290.

6

1    Ramirez also testified that she could stand for 2-3 hours in an 8-hour day, which

2    is in fact more than the ALJ's formal findings.  A.R. 16, 211.

3         Ramirez's reliance on the MRI dated January 23, 2006, does not alter this

4    conclusion.  The MRI was taken only 5 days after the January 17, 2006, hearing

5    at which Ramirez testified about her limitations.  A.R. 194, 197.  Moreover,

6    Ramirez's argument that the 2006 MRI indicated "significant osteoarthritic and

7    degenerative changes" in her right knee is overstated.  JS at 11, A.R. 194-95.

8    Although some "changes" were noted in the MRI – "tricompartmental

9    osteoarthritic changes" and "subcondral reactive marrow changes" – they are not

10   described as "significant."  A.R. 194.  As discussed earlier, Ramirez does not

11   argue that there is a reasonable possibility that the MRI would have changed the

12   outcome.

13        Ramirez argues that the ALJ "should have consulted with a medical expert

14   regarding the effect of the Plaintiff's obesity on her limitations."  JS at 11.  An ALJ

15   must develop the record only if the evidence is ambiguous or "the record is

16   inadequate to allow for proper evaluation of the evidence."  *Mayes*, 276 F.3d at

17   459-60; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  This principle

18   does not, however, allow a claimant to shift her own burden of proving disability

19   to the ALJ.  *Mayes,* 276 F.3d at 459.  Here, the ALJ did not find that the evidence

20   was ambiguous or inadequate, and no physician rendered such an opinion.

21   *Compare Tonapetyan*, 242 F.3d at 1150 (physician found it "difficult to say"

22   whether medical record was complete enough, stated he would "have to see

23   more evidence" before rendering an opinion, and testified a more complete report

24   would change his opinion).  Ramirez's argument is completely speculative.  In

25   these circumstances, the ALJ was not required to consult with a medical expert

26   concerning Ramirez's obesity and its limiting effects on her ability to work.

27   ///

28   ///

1

### D.   Plaintiff's Subjective Complaints

2

"[T]o discredit a claimant's testimony when a medical impairment has been

3

established, the ALJ must provide specific, cogent reasons for the disbelief."  *Orn*

4

*v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and internal quotation

5

marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is

6

unpersuasive."  *Id.* (citation and internal quotation marks omitted).  If the ALJ has

7

not found that the claimant is a malingerer, his "reasons for rejecting the

8

claimant's testimony must be clear and convincing."  *Id.* (citation and internal

9

quotation marks omitted).  "In making a credibility determination, the ALJ 'must

10

specifically identify what testimony is credible and what testimony undermines the

11

claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)

12

(citation omitted).

13

Here, the ALJ did not find that Ramirez was a malingerer.  The ALJ's

14

residual functional capacity assessment took into account certain of Ramirez's

15

pain complaints.  However, the ALJ did not accept the allegation that Ramirez's

16

pain precluded all substantial gainful activity.  The ALJ gave specific, clear and

17

convincing reasons for finding that, although "the claimant's medically

18

determinable impairments could reasonably be expected to produce the alleged

19

symptoms," "the claimant's statements concerning the intensity, duration and

20

limiting effects of these symptoms are not entirely credible."  A.R. 19.

21

The ALJ properly relied on Ramirez's own testimony.  "The claimant

22

admitted that if she could get a job sitting, she said that she could do it."  A.R. 20,

23

218.

24

With respect to Ramirez's physical limitations, the only real difference

25

between the ALJ's findings and Ramirez's complaints are that Ramirez said she

26

could sit for no more than 4 hours in a day (A.R. 212-13), whereas the ALJ found

27

that she could sit a total of 6 hours in an 8-hour day (A.R. 16).  The ALJ stated

28

that "the claimant's statements in the record and testimony at the hearing are

8

1    sincere and credible as to symptomology, but neither medical records nor

2    medical testimony support the disabling degree of severity of limitations to which

3    the claimant has asserted."  A.R. 19.  The ALJ explained the reasons for his

4    findings throughout his opinion.  For example:

5         Examination of the lower extremities revealed that despite her

6         obesity and complaints of knee pain, there was no evidence of

7         redness, persistent swelling, atrophy, circulatory deficit, increased

8         heat, or deformity and at times there was full range of motion.  There

9         is no evidence of loss of motor strength in the lower extremities and

10        sensation is normal. . . .  I find the claimant has a medically

11        determinable impairment that could reasonably cause some pain and

12        dysfunction.  However, the complaints of a disabling level of pain are

13        not credible and are not reasonably supported by objective medical

14        evidence.

15   A.R. 19; *see also id.* at 20.  Although the absence of supporting objective medical

16   evidence is not sufficient alone, it is a factor that the ALJ may consider.  *Burch v.*

17   *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

18        The ALJ also relied on Ramirez's mild and conservative course of

19   treatment consisting of physical therapy and medications with no evidence of

20   significant side effects and or that the medications were ineffective.  A.R. 19-20.

21   *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount

22   claimant's testimony based on conservative treatment), *cert. denied*, 128 S. Ct.

23   1068 (2008); *Warre v. Commissioner of the Social Security Administration*, 439

24   F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively

25   with medication are not disabling for the purpose of determining eligibility for SSI

26   benefits.") (citation omitted).

27        "If the ALJ's credibility finding is supported by substantial evidence in the

28   record, we may not engage in second-guessing."  *Thomas v. Barnhart,* 278 F.3d

9

1    947, 959 (9th Cir. 2002); *Morgan v. Commissioner of the Social Security*
2    *Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

3        **E.    Plaintiff's Right to Counsel**

4        "A social security [recipient] has a statutory right, which may be waived, to
5    be represented by counsel before an ALJ." *Graham v. Apfel*, 129 F.3d 1420,
6    1422 (11th Cir. 1997) (per curiam); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.
7    1994); 24 U.S.C. § 406.

8        However, "absence of counsel alone [is] not sufficient grounds for remand."
9    *Hall v. Sec'y of Health, Education and Welfare*, 602 F.2d 1372, 1378 (9th Cir.
10   1979) (citation omitted). "The claimant must demonstrate prejudice or unfairness
11   in the administrative proceedings to be entitled to relief by way of remand." *Id.*
12   (citations omitted). "[T]he issue is not whether the right to representation was
13   knowingly waived, rather, it is whether, in the absence of representation, the
14   administrative law judge met the heavy burden imposed by *Cox*." *Vidal v. Harris*,
15   637 F.2d 710, 714 (9th Cir. 1981). In *Cox*, the court held that when the claimant
16   is unrepresented, the ALJ must "scrupulously and conscientiously probe into,
17   inquire of, and explore all relevant facts," and he must be "especially diligent in
18   ensuring that favorable as well as unfavorable facts and circumstances are
19   elicited." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978).

20       Ramirez was given notice about obtaining representation. A.R. 28, 36, 40-
21   43. At the hearing, the ALJ confirmed that Ramirez had "written information
22   about your right to hire a representative" and "since you are appearing here
23   without a representative I am assuming that you wish to proceed without a
24   representative today." Ramirez answered, "Today, yes." A.R. 200.

25       Ramirez contends that she was prejudiced by her lack of representation
26   because the ALJ failed to properly develop the vocational issues. JS at 6-7.
27   More specifically, Ramirez argues that the vocational expert should have been
28   cross-examined about "transferability of skills and alternative occupations" and

1   "about any adjustment that might be required by the Plaintiff for those

2   occupations identified where the VE states skills would transfer." *Id.* at 6, 7.

3   Finally, Ramirez argues that the ALJ should have inquired "whether the Plaintiff

4   performed the security occupation long enough to acquire the clerical skills

5   suggested by the vocational expert, and what percentage of her day was spent

6   on unskilled activities as opposed to the skilled activities suggested by the

7   vocational expert." *Id.* at 7.

8        The vocational expert testified that Ramirez had acquired transferable skills

9   in data entry, filing, payroll, scheduling and customer service.  A.R. 226.  She

10  testified that although Ramirez could not perform her past work, she could

11  perform work as an information clerk, an appointment clerk, or a charge account

12  clerk.  A.R. 228.  The jobs of information clerk and appointment clerk would use

13  the transferable skills, but the job of charge account clerk, which is unskilled,

14  would not.  A.R. 228-229.

15       The ALJ's finding that Ramirez's past work was semi-skilled, with a specific

16  vocational preparation code of 3 and 4,[5] and involved the transferable skills

17  outlined by the vocational expert were supported by substantial evidence.  A.R.

18  21; *see also* A.R. 109 (Work Summary prepared by vocational expert).  A "skill" is

19  "knowledge of a work activity which requires the exercise of significant judgment

20  that goes beyond the carrying out of simple job duties and is acquired through

21  performance of an occupation which is above the unskilled level." See SSR

22  82-41(available at 1982 WL 31389).[6]  A skill is likely to be transferable to a new

23

24       [5]  The Dictionary of Occupational Titles ("DOT") provides a specific
    vocational preparation ("SVP") time for each described occupation.  Social
25  Security Ruling ("SSR") 00-4p (available at 2000 WL 1898704).  The SVP
    corresponds to the level of skill required to complete a given job.  *Id.*
26

27       [6]  Social Security rulings do not have the force of law.  Nevertheless, they
    "constitute Social Security Administration interpretations of the statute it
28  administers and of its own regulations," and are given deference "unless they are
    plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882

1   job when: (1) the new job requires the same or a lesser degree of skill than the

2   old job; (2) the same or similar tools and machines are used in both jobs; and (3)

3   the same or similar raw materials, products, processes, or services are involved

4   in both jobs.  20 C.F.R. § 404.1568(d)(2)(i)-(iii).  It is not necessary for there to be

5   complete similarity of all three factors. *Id.* § 404.1568(d)(3).

6        Ramirez reported that she worked for a security company from 1987 to

7   1997.  A.R. 102-103; *see* A.R. 222.  In describing her duties during the seven-

8   year period 1990-1997, she was involved in scheduling, timekeeping, and payroll

9   data input.  A.R. 103.  She was promoted to client service supervisor and met

10  with clients.  A.R. 78.  Ramirez also reported that she used technical knowledge

11  or skills, and wrote and completed reports.  *Id.* She said she supervised 200

12  people about 1-2 days per week.  *Id.*  Upon being questioned by the vocational

13  expert at the hearing, Ramirez testified to the same duties and explained that

14  payroll involved inputting data in the computer and uploading the information to

15  the corporate office in the east.  A.R. 220-221.

16       On this record, Ramirez fails to demonstrate prejudice from a lack of

17  representation by counsel.  The ALJ fully and fairly developed the record.  In

18  addition, although Ramirez argues that she did not realize her exhibit file was

19  incomplete, the Appeals Council noted that Ramirez has never identified any

20  missing records.  A.R. 5.  There is substantial evidence in the record that

21  Ramirez had the opportunity to review her file before and at the hearing, and that

22  the ALJ reviewed the exhibits on the record.  A.R. 199, 204-205.

23  **IV.**

24  **ORDER**

25       IT IS HEREBY ORDERED that the decision of the Commissioner is

26  affirmed.

27  _____

28  F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

1    IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

2    Order and the Judgment herein on all parties or their counsel.

3

4    DATED: March 5, 2008

                                    _____
5                                       ALICIA G. ROSENBERG
                                       United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13